## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | |
|      Plaintiff, | |
| v. | Civil Action No.: |
| C AND H PAVING, INC a/k/a C&H PAVING, INC., QUALITY ASPHALT, LLC, BENJAMIN CRANFORD, INC., BENJAMIN C. CRANFORD, JR., EMMALEE CRANFORD, ALL STAR CONCRETE, INC., CANAAN C. CRANFORD, and BENJAMIN C. CRANFORD, III. | |
|      Defendants. | |

## COMPLAINT

Plaintiff, FIDELITY AND DEPOSIT COMPANY OF MARYLAND ("F&D"), through its undersigned counsel, files this Complaint against each of the above-referenced Defendants and alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.  F&D is an Illinois corporation authorized to conduct business in Georgia, who is a citizen of Illinois with a statutory home office / principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196.

2.     C AND H PAVING, INC. a/k/a C&H PAVING, INC. (referred to herein as "C&H Paving," "C&H," or the "Contractor") is a citizen of Georgia and a Georgia corporation believed to have it principal place business at 204 Main Street, Thomson, GA, 30824.

3.     QUALITY ASPHALT, LLC is a citizen of Georgia and a Georgia LLC believed to have its principal place of business at 204 Main Street, Thomson, GA, 30824. Upon information and belief, QUALITY ASPHALT, LLC's member(s) is/are BENJAMIN C. CRANFORD, JR., and/or Reginald D. Mabus, both of whom are residents and citizens of Georgia.

4.     BENJAMIN CRANFORD, INC. is a citizen of Georgia and Georgia corporation believed to have its principal place of business at 204 Main Street, Thomson, GA, 30824.

5.     BENJAMIN C. CRANFORD, JR. is citizen of Georgia believed to be residing at 1136 Wrens Highway, Thomson, GA 308924.

6.     EMMALEE CRANFORD is a citizen of Georgia believed to be residing at 1136 Wrens Highway, Thomson, GA 308924.

7.     C&H Paving, Quality Asphalt, Benjamin Cranford, Inc., Benjamin C. Cranford, Jr., and Emmalee Cranford (but not the rest of the Defendants to the lawsuit) are referred to below at times as the "General Indemnitors".

8.     ALL STAR CONCRETE, INC. ("All Star") is a citizen of Georgia and a Georgia corporation believed to have its principal place of business at 1136 Wrens Highway, Thomson, GA, 30824.

9.     CANAAN C. CRANFORD is a citizen of Georgia believed to be residing at 3501 GA HWY 17 N, Wrens, GA 30833.

10.     BENJAMIN C. CRANFORD, III is a citizen of Georgia believed to be residing at 1136 Wrens Highway, Thomson, GA 308924.

11.     Jurisdiction and venue are proper under  28 U.S.C. §§ 1332 and 1391 because, among other things: (i) the matter in controversy exceeds $75,000.00, exclusive of interest and costs; (ii) complete diversity of citizenship exists between F&D and each of the Defendants; (iii) some or all of the Defendants reside within the Augusta Division of the Southern District of Georgia; and (iv) some or all of the actions and/or inactions giving rise to the losses/damages at issue occurred within the Augusta Division of the Southern District of Georgia.

## **FACTS**

12.     In 2015, the General Indemnitors executed a General Indemnity Agreement (referred to here as the "GIA") in favor of F&D. A copy of the GIA is attached hereto as **Exhibit "A"** and is incorporated here by reference.

13.     Execution of the GIA and the commensurate complete indemnification of F&D was a condition precedent to F&D issuing the performance and payment

- 3 -

bonds naming C&H Paving as principal for the projects referenced more specifically below.

14.     By executing the GIA, the General Indemnitors agreed that, among other things, they would:

> exonerate, indemnify, and hold [F&D] harmless from any and all liability and Loss, sustained or incurred , arising from or related to: (a) any Bond, (b) any Claim , (c) any Indemnitor failing to timely and completely perform or comply with [the GIA], (d) [F&D] enforcing [the GIA] or (e) any act of [F&D]to protect or procure any of [F&D]'s rights, protect or preserve any of Surety's interests, or to avoid , or lessen [F&D]'s liability or alleged liability. *See* Section 2 of the GIA.

15.     The General Indemnitors also agreed, among other things, that "[a]n itemized statement of Loss, sworn to by any officer of [F&D], or the voucher or other evidence of any payment, shall be prima facie evidence of the fact, amount and extent of the liability of [the General Indemnitors] for such Loss." *See* Section 2 of the GIA.

16.     At one or more of the General Indemnitors' request(s), and in reliance on the GIA, F&D executed payment and performance bonds (the "Bonds") for the Georgia Department of Transportation ("GDOT") for projects listed in **Exhibit "B"** attached hereto.

17.     In January of 2022, C&H Paving advised F&D that it had encountered financial difficulties and desired assistance from F&D to pay debts and to help C&H

continue doing business. A copy of a letter from C&H to F&D is attached hereto as **Exhibit "C"** and is incorporated here by reference.

18.    GDOT has expressed concerns in writing to C&H and/or F&D concerning C&H's lack of progress and/or delays on the Bonded Projects and complaints GDOT received from C&H's subcontractors and suppliers who allege they were not paid by C&H for labor, services, and/or materials incorporated into one or more of the Bonded Projects. Examples (but not necessarily all) of these communications from GDOT are attached hereto as composite **Exhibit "D"** and are incorporated here by reference.

19.    F&D has also been faced with payment bond claims and/or potential payment bond claims from several of C&H Paving's subcontractors and/or suppliers, including, but not limited to claims by Arcilla/Piedmont and Hunt Refinery.

20.    In March of 2022, in response to, among other things, in person meeting(s) and telephone call(s) during which F&D made demands for reimbursement and collateral security, the General Indemnitors and F&D entered into an agreement ("March 2022 Agreement"), a copy of which is attached hereto as **Exhibit "E"** and is incorporated here by reference, wherein the General Indemnitors agreed, among other things, to:

a.    use their best efforts to complete the Bonded Projects by the deadlines in any contract(s) with GDOT (Paragraph 1 of the March 2022 Agreement);

b.    use all of the General Indemnitors' equipment, personnel, property, and assets, including but not limited to the asphalt plant that C&H Paving and/or General Indemnitors own and/or control to complete the Bonded Projects (Paragraph 1 of the March 2022 Agreement);

c.    commit proceeds from any and all non-bonded work to pay C&H Paving's debt(s) and overhead necessary to complete the Bonded Projects (Paragraph 2 of the March 2022 Agreement);

d.    fully cooperate with F&D, including but not limited to efforts to complete the Bonded Projects and to investigate claims or potential claims from C&H Paving's subcontractors and/or suppliers and/or potential subcontractors and/or potential suppliers who might be needed or desired to complete the Bonded Projects and/or honor any of F&D's obligations under the Bonds for the Bonded Projects (Paragraph 4 of the March 2022 Agreement);

e. use their best efforts to facilitate cooperation to assist F&D in its efforts to monitor C&H Paving's and its subcontractors' and suppliers' work related to the Bonded Projects (Paragraph 8 of the March 2022 Agreement);

f. cooperate with F&D to grant F&D access to status and payments and other information concerning work and funds relating to projects other than the Bonded Projects, and to enable F&D to monitor C&H Paving's debt, overhead, and other obligations and determine whether the same are being paid timely and in full through proceeds on projects that F&D did not bond (Paragraph 10 of the March 2022 Agreement); and

g. sign and record liens, mortgages, notes, and/or deed(s) to secure debt(s) in favor of F&D and encumbering **any and all** of General Indemnitors' and their subsidiaries/affiliates' real and personal property (emphasis added) (Paragraph 13 of the March 2022 Agreement).

21. As requested of F&D by C&H, and as contemplated in the March 2022 Agreement, F&D paid Arcilla/Piedmont $2,186,985.71 and Hunt Refinery $2,266,128.17 respectively, to resolve their Bond claims.

22.     The General Indemnitors have breached the March 2022 Agreement by, among other things:

      a.    failing and/or refusing to complete the Bonded Projects on time;

      b.    transferring equipment, personnel, and/or property owned by one or more of the General Indemnitors to Defendants All Star and/or Canaan C. Cranford and/or using equipment, personnel, and/or property owned by one or more of the General Indemnitors on non-bonded projects;

      c.    failing and/or refusing to cooperate with F&D and its consultant, Nicholson Professional Consulting; and

      d.    terminating and failing to reinstate F&D's access to C&H Paving's financial systems and information.

23.     In addition to the above-described breaches of the March 2022 Agreement, Benjamin C. Cranford, Jr. recently informed F&D's consultant, Nicholson Professional Consulting, in a telephone call on July 17, 2023 that his son, Cannon C. Cranford, owned real property on which an asphalt plant in which F&D has a security interest is located.  F&D determined after the call that Benjamin C. Cranford, Jr. improperly transferred certain real property to Canaan C. Cranford on or about May 3, 2022, via a Gift of Deed. This occurred within two months of Benjamin C. Cranford, Jr. signing the March 2022 Agreement committing to pledge

all real and other property he owned to F&D.  A copy of the Deed of Gift is attached

here as **Exhibit "F"** and is incorporated hereto by reference.

24.    In addition, F&D recently learned that Benjamin C. Cranford, Jr. jointly

owns certain real property with Benjamin C. Cranford, III (one of Benjamin C.

Cranford, Jr.'s sons), and that Benjamin C. Cranford, Jr. gifted ownership interest to

Benjamin C. Cranford, III as to those properties via a Quitclaim Deed. A copy of the

Quitclaim Deed is attached here as **Exhibit "G"** and is incorporated hereto by

reference.

25.    In spite of his obligation under the March 2022 Agreement to pledge to

F&D all real and other property in which he had an ownership interest, Benjamin C.

Cranford, Jr. failed to do so as to these properties.

26.    Moreover, Benjamin C. Cranford, Jr. gifted the ownership interest in

these properties to Benjamin C. Cranford, III after Benjamin C. Cranford. Jr. advised

F&D that C&H was unable to meet its financial obligations, and in spite of F&D's

indemnity, collateral, and other rights under the GIA.

27.    Defendant Emmalee Cranford also separately breached the March 2022

Agreement by failing and/or refusing to sign documents required to transfer to F&D

real property that Ms. Cranford owns located at 1136 Wrens Highway, Thomson,

Georgia 30824.

28.     Pursuant to the March 2022 Agreement, on or about May 12, 2022, C&H Paving, Inc., Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr. signed a promissory note in favor of F&D ("Promissory Note"), and in conjunction therewith, provided security deeds in favor of F&D for certain real property ("Security Deeds"). A copy of the Promissory Note is attached here as **Exhibit "H"** and is incorporated hereto by reference; copies of the Security Deeds are attached here as composite **Exhibit "I"** and are incorporated here by reference.

29.     The Promissory Note required Defendants C&H Paving, Inc., Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr. to, among other things, pay F&D $100,000.00 on December 1, 2022, and to also make payments to F&D on the first of each month from January 1, 2023, through December 1, 2024, to repay amounts owed to F&D under the Promissory Note.

30.     To date, Defendants C&H Paving, Inc., Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr. have failed to make any payments to F&D, in breach of the Promissory Note.

31.     As of June 30, 2023, by reason of bonding C&H Paving, F&D had suffered in excess of $4.4 Million in losses that are in addition to approximately $1 Million in fees, costs, and expenses F&D incurred as a result of bonding C&H and that are also recoverable in this action.

32.     It is undisputed that F&D is threatened with the possibility of incurring additional damages.

33.     Defendants C&H and All Star provided F&D with documents in the last 30 days suggesting they envision at least another $1.6 Million or more in losses in the future to complete the Bonded Projects.

34.     More specifically, on June 28, 2023, C&H informed F&D that C&H had apparently subcontracted with All Star on the Jefferson County Project – Project No. 222150 ("Jefferson Project"), the costs of which were $3.2 Million or more higher than the original pricing C&H had agreed to with GDOT for that project.

35.     All Star's subcontract and related documents also suggested C&H anticipated another $4 Million or more in additional losses on the Jefferson Project.

36.     C&H also informed F&D that C&H had subcontracted with All Star on the Burke County Project – Project No. 0012575 ("Big Burke Project")[1], the costs of which were $1.6 Million higher than the original pricing C&H had agreed to with GDOT for that project.

37.     F&D also just learned that All Star has been sued by Bank of West for over $80,000 for an allegedly unpaid equipment financing agreement. *See* Copy of the Complaint in that case attached hereto as Exhibit "J".

---

[1] There were two Burke County Projects F&D bonded, which have been referred to throughout construction as the "Little Burke" and "Big Burke" projects.

38.     C&H also informed F&D that All Star is not willing or able to provide payment and performance bonds to guarantee its work for the Bonded Projects.

39.     Benjamin C. Cranford, Jr. also informed Nicholson Professional Consulting by phone that C&H and All Star were unwilling to comply with terms F&D required to ensure F&D was adequately protected in light of the closely held nature of All Star and a variety of concerns (which were all outlined in a virtual meeting between F&D and C&H for which there is a transcript of what was discussed).

40.     The General Indemnitors have failed to exonerate and/or hold F&D harmless, as required by the GIA, for the claims referenced above asserted against F&D under the Bonds.

41.     The General Indemnitors have also failed to comply with all of their obligations under the March 2022 Agreement and under the Promissory Note.

42.     F&D retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered and costs incurred.

43.     All conditions precedent to maintaining this action have occurred, been excused, or have otherwise been waived.

## COUNT I

### (Breach of Indemnity Agreement Against General Indemnitors)

44.     F&D realleges and incorporates paragraphs 1 through 43 above, as though fully set forth herein.

45.     C&H Paving failed to satisfy its obligations to GDOT and has failed to safeguard F&D from claims by C&H Paving's subcontractors and suppliers.

46.     The General Indemnitors have failed to satisfy their obligations to F&D.

47.     Despite F&D's demands for indemnification, reimbursement, and/or collateral, among other things, the General Indemnitors have failed and/or refused to honor their obligations to F&D under the GIA.

48.     Among other things, C&H Paving and the other General Indemnitors breached the terms of the GIA by C&H Paving failing and/or refusing to honor its contractual and/or other obligations to GDOT and/or subcontractors and suppliers, and by the General Indemnitors failing and refusing to exonerate, indemnify, and to hold F&D harmless from all losses and exposure F&D has faced relating to the Bonded Projects.

49.     F&D has incurred damages, including millions of dollars paid to complete work on the Bonded Projects and to resolve claims and/or potential claims of subcontractors and suppliers of C&H Paving on the Bonded Projects, as well as

consulting and/or legal fees, costs, and expenses incurred prior to bringing and maintaining this action.

50.   F&D has suffered, and continues to suffer, various kinds of liability, damage, loss, and expense as the proximate result of having executed the Bonds and because of the General Indemnitors' breaches of their obligations under the GIA.

51.   Pursuant to the GIA, F&D is entitled to an award of its principal damages, plus its attorneys' and consulting and other fees, costs, and expenses incurred in bringing and maintaining this action.

WHEREFORE, F&D demands judgment against the General Indemnitors (jointly and severally) for its damages, attorneys' fees, costs, expenses, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT II
**(Specific Performance of Indemnity Agreement Against General Indemnitors)**

52.   F&D realleges and incorporates paragraphs 1 through 43 above, as though fully set forth herein.

53.   The GIA requires the General Indemnitors to indemnify F&D and keep it indemnified from and against all liability for losses and/or expenses arising from various circumstances more particularly described in the GIA.

54.     F&D has suffered and continues to suffer various kinds of liability, loss, and expense as a result of having executed the Bonds because of the General Indemnitors' failure to honor their obligations under the GIA.

55.     In addition to the liability, loss, and expense that F&D has suffered, F&D may be responsible and liable for additional losses, costs, and expenses not known to F&D at this time but which are anticipated to be in the range of $5 Million or more.  This is in addition to the over $5 Million in losses, fees, and expenses F&D has already incurred.

56.     Despite F&D's demand that the General Indemnitors fulfill their obligations under the GIA, the General Indemnitors have failed and refused to do so.

57.     F&D has no adequate remedy at law to enforce its rights.

58.     The GIA is just and reasonable and supported by adequate consideration.

59.     The terms of the GIA are sufficiently definite to allow enforcement by this Court.

60.     The performance F&D seeks is substantially identical to that promised in the GIA.

WHEREFORE, F&D requests that this Court enter a decree of specific performance compelling the General Indemnitors to, among potentially other things:

a.      Refrain from moving or transferring any vehicles, traffic control equipment and other personal property from the Bonded Projects or that has been used or could be used to complete the Bonded Projects and/or return any property that has been transferred;

b.      Refrain from further transfers of any real or personal property to ensure that F&D has the benefit of that property for mitigating its loss(es) at issue and return to the original owner(s) any property that has been transferred;

c.       Cooperate with F&D's efforts to mitigate its loss(es) on the Bonded Projects;

d.      Exonerate, indemnify, and keep F&D indemnified, according to the terms of the GIA, for all liability asserted against F&D, whether or not F&D has made any payment; and;

e.      otherwise honor all other agreements and obligations contained in the GIA.

## **COUNT III**

### **(Breach of March 2022 Agreement Against General Indemnitors)**

61.     F&D realleges and incorporates paragraphs 1-43 above, as though fully set forth herein.

62. By signing the March 2022 Agreement, the General Indemnitors agreed to perform all obligations thereunder.

63. The General Indemnitors have breached the March 2022 Agreement by, among other things: (1) failing and/or refusing to adequately prosecute the work and/or complete the Bonded Projects (resulting in GDOT claiming delay/liquidated damages on at least two projects (Big Burke and Jefferson); use all of their equipment, personnel, property, and assets to complete the Bonded Projects; to maintain certain insurance for the Bonded Projects and/or allowing same to lapse for months and failing to communicate timely and effectively with F&D about that occurring (despite F&D just learning that C&H has been sued for a 2022 accident involving one of its drivers); and terminating and failing and/or refusing to reinstate F&D's access to C&H Paving's financial accounts and records and otherwise failing to cooperate with F&D and its consultant, Nicholson Professional Consulting.

64. Benjamin C. Cranford, Jr. also breached the March 2022 Agreement when he transferred certain real property to Canaan C. Cranford on or about May 3, 2022.

65. Emmalee Cranford also breached the March 2022 Agreement by failing and refusing to transfer to F&D property she owns located at 1136 Wrens Highway, Thomson, Georgia 30824.

66.    F&D has incurred damages, including millions of dollars paid to help progress the work on the Bonded Projects and to resolve claims and potential claims of subcontractors and suppliers of C&H Paving on the Bonded Projects, as well as attorneys' and/or consulting fees, costs, and expenses incurred prior to bringing and maintaining this action.

67.    F&D has suffered, and continues to suffer, various kinds of liability, damage, loss, and expense as the proximate result of having executed the Bonds and because of the General Indemnitors' breaches of their obligations under the March 2022 Agreement.

WHEREFORE, F&D demands judgment against the General Indemnitors (jointly and severally) for its damages, attorneys' fees, costs, expenses, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT IV

**(Breach of Promissory Note Against C&H Paving, Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr.)**

68.    F&D realleges and incorporates paragraphs 1-43 above, as though fully set forth herein.

69.    The Promissory Note required Defendants C&H Paving, Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr. to, among other things, pay F&D $100,000.00 on December 1, 2022, and to make monthly payments to F&D starting

January 1, 2023, to reimburse F&D for losses F&D sustained as a result of issuing the Bonds.

70.    Defendants C&H Paving, Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr. have breached the Promissory Note by failing and refusing to make any of the required payments to F&D under the Promissory Note.

71.    F&D has suffered, and continues to suffer, various kinds of liability, damage, loss, and expense as the proximate result of having executed the Bonds and because of the breaches of Defendants C&H Paving, Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr. of their obligations under the Promissory Note.

72.    Pursuant to the Promissory Note, F&D is entitled to an award of its principal damages, plus its attorneys' fees, costs, and expenses incurred in bringing and maintaining this action.

WHEREFORE, F&D demands judgment against Defendants C&H Paving, Benjamin Cranford, Inc., and Benjamin C. Cranford, Jr. (jointly and severally) for its damages, attorneys' fees, costs, expenses, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## <u>COUNT V</u>
### (Improper Transfer Against Benjamin C. Cranford, Jr. and Canaan C. Cranford)

73.    F&D realleges and incorporates paragraphs 1-43 above, as though fully set forth herein.

74.     After signing the March 2022 Agreement, in which he agreed to, among other things, sign and record liens, mortgages, notes, and/or deed(s) to secure debt(s) in favor of F&D and encumbering **any and all** of his real and personal property, Benjamin C. Cranford, Jr. transferred certain real property to one of his sons, Canaan C. Cranford.

75.     The transfer was improper, pursuant to O.C.G.A. § 18-2-74.

76.     Actual improper intent is evidenced by, among potentially other things:

    a.    The transfer was a gift (i.e., not for sufficient value, if any) to an insider, Canaan C. Cranford (Defendant Benjamin C. Cranford, Jr.'s son);

    b.    The transfer occurred after Benjamin C. Cranford. Jr. advised F&D that C&H was unable to meet its financial obligations and within weeks after Benjamin C. Cranford, Jr. responded to F&D's collateral, indemnity, reimbursement demands by signing the March 2022 Agreement, wherein he pledged to sign and record liens, mortgages, notes, and/or deed(s) to secure debt(s) in favor of F&D and encumbering **any and all** of his real and personal property.

77.   The Property transfer was also an improper transfer as to F&D pursuant to O.C.G.A. § 18-2-74 because Benjamin C. Cranford, Jr. did not receive reasonable equivalent value in exchange for said transfer.

78.   But for this improper transfer of the real property/ies referenced in Exhibit "F" to this Complaint (which is incorporated here by reference), the transferred property is subject to F&D's rights under the GIA and/or the March 2022 Agreement and/or should be avoided and returned to Benjamin C. Cranford, Jr. and F&D granted a security interest in them as required under the March 2022 Agreement and otherwise made available to mitigate F&D's losses and potential loss(es).

79.   Because the transfer of the property was improper, F&D seeks an avoidance of the transfer.

WHEREFORE, F&D respectfully requests that the Court issue judgment in F&D's favor finding that Benjamin C. Cranford, Jr.'s transfer of the properties in Exhibit "F" (and any other properties that may be identified later to have been improperly transferred) to Canaan C. Cranford to be improper and restoring Benjamin C. Cranford, Jr.'s ownership in the property.

## <u>COUNT VI</u>
**(Improper Transfer Against Benjamin C. Cranford, Jr and Benjamin C. Cranford, III)**

80.     F&D realleges and incorporates paragraphs 1-43 above, as though fully set forth herein.

81.     After Benjamin C. Cranford. Jr. advised F&D that C&H was unable to meet its financial obligations, and notwithstanding F&D's indemnity, collateral, and other rights under the GIA, Benjamin C. Cranford. Jr. gifted ownership interest to Benjamin C. Cranford, III as to certain properties described herein via a Quitclaim Deed.

82.     The transfer was improper pursuant to O.C.G.A. § 18-2-74.

83.     Actual improper intent is evidenced by, among potentially other things:

    a.     The transfer was a gift (i.e., not for sufficient value, if any) to an insider, Benjamin C. Cranford, III (Defendant Benjamin C. Cranford, Jr.'s son);

    b.     The transfer occurred after Benjamin C. Cranford. Jr. advised F&D that C&H was unable to meet its financial obligations.

84.     The Property transfer was also an improper transfer as to F&D pursuant to O.C.G.A. § 18-2-74 because Benjamin C. Cranford, Jr. did not receive reasonable equivalent value in exchange for said transfer.

85.     But for this improper transfer of the real property/ies referenced in Exhibit "G" to this Complaint (which is incorporated here by reference), the transferred property is subject to F&D's rights under the GIA and/or the March 2022

Agreement and/or should be avoided and returned to Benjamin C. Cranford, Jr. and F&D granted a security interest in them as required under the March 2022 Agreement and otherwise made available to mitigate F&D's losses and potential loss(es).

86.    Because the transfer of the property was improper, F&D seeks an avoidance of the transfer.

WHEREFORE, F&D respectfully requests that the Court issue judgment in F&D's favor finding that Benjamin C. Cranford, Jr.'s transfer of the properties in Exhibit "G" (and any other properties that may be identified later to have been improperly transferred) to Canaan C. Cranford to be improper and restoring Benjamin C. Cranford, Jr.'s ownership in the property.

## COUNT VII
### (Improper Transfer Against C&H Paving and All Star)

87.    F&D realleges and incorporates paragraphs 1-43 above, as though fully set forth herein.

88.    After signing the March 2022 Agreement, in which C&H Paving agreed to, among other things, use all of the General Indemnitors' equipment, personnel, property, and assets to complete the Bonded Projects, C&H Paving transferred and/or is threatening to transfer to Defendants All Star equipment, personnel, and/or

property that was owned by C&H and/or one or more of the other General Indemnitors.

89.     The transfer was improper pursuant to O.C.G.A. § 18-2-74.

90.     Actual improper intent is evidence by, among potentially other things:

      a.     The transfer was to an insider All Star, which is owned by Benjamin C. Cranford, III (Defendant Benjamin C. Cranford, Jr.'s son); and

      b.     The transfer occurred after C&H Paving signed the March 2022 Agreement wherein it pledged to use all of the General Indemnitors' equipment, personnel, property, and assets to complete the Bonded Projects.

91.     The Property transfer was also an improper transfer as to F&D pursuant to O.C.G.A. § 18-2-74 because C&H Paving did not receive reasonable equivalent value in exchange for said transfer.

92.     But for this improper transfer, the transferred property is subject to F&D's rights under the GIA and the March 2022 Agreement.

93.     Because the transfer of the property was an improper transfer, F&D seeks an avoidance of the transfer.

WHEREFORE, F&D respectfully requests that the Court issue judgment in F&D's favor finding that C&H Paving's transfer of the property to All Star was improper and restoring C&H Paving's ownership in the property.

## COUNT VIII
### (Request for Injunctive Relief Against All Defendants)

94.     F&D realleges and incorporates the allegations in paragraphs 1 through 43 above as if fully set forth herein.

95.     As a result of issuing the Bonds, F&D has already been called upon, and believes it will continue to be called upon in the future, to pay C&H Paving's debts and/or perform C&H Paving's obligations.

96.     The General Indemnitors are obligated to indemnify and keep F&D indemnified from any liability for any losses or expenses.

97.     The General Indemnitors have failed to meet their indemnity obligations by, among other things, failing or refusing to satisfy their obligations to F&D under the GIA, March 2022 Agreement, and/or the Promissory Note.

98.     The General Indemnitors have failed and/or refused and continue to refuse to perform their various obligations.  As a result, F&D reasonably fears that it will suffer further damages as a result of the General Indemnitors' alleged defaults on the Bonded Project and their failure to honor their obligations to F&D.

99.     Unless the Court immediately grants the requested relief, the General Indemnitors and/or other Defendants may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing F&D's access to these assets for discharging the obligations of the General Indemnitors to exonerate and indemnify F&D. Such actions would irreparably harm F&D. **More importantly, any removal or transfer of any traffic control or other safety equipment and other equipment, materials, etc. on or used for the Bonded Projects could adversely affect public safety, which is of critical concern to F&D. The Court should enjoin C&H and any Defendants from removing or assisting in the removal or transfer of any traffic control or other safety equipment and other equipment, materials, etc. on or used for the Bonded Projects, in keeping with F&D's assigned and other rights in the GIA.**

100.    F&D is without a plain, speedy, or adequate remedy at law, and will be irreparably and permanently injured if this Court does not grant the relief sought.

101.    F&D has already incurred losses of more than $5 million, including payments made to help progress the work on the Bonded Projects, and to settle with subcontractors and/or suppliers of C&H Paving on the Bonded Projects, and to investigate the claims and exposure on those projects.

102.    F&D has a good faith basis for believing it faces considerable future exposure to additional losses, and because: (a) F&D has already suffered damages

as a result of satisfying claims on the Bonds that the General Indemnitors failed and/or refused to satisfy; (b) One or more of the Defendants admits there will be future losses; (c) GDOT is expressing concerns over two Bonded Projects that GDOT claims are late and incurring delay / liquidated damages on a daily basis; (d) F&D has recently learned that one or more of the Defendants is acting in ways that jeopardize its salvage and other rights; (e) F&D has recently learned of lawsuit(s) involving one or more of the Defendants that cause concerns about C&H's and/or All Star's ability/ies to complete the Bonded Projects; and (f) F&D has had to pay more than $100,000 to repair defective work C&H performed on one or more of the Bonded Projects.

103.   F&D is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Indemnity Agreement and Georgia law.

WHEREFORE, F&D requests that this Court enter an Order:

a.   preventing the General Indemnitors from diverting or disbursing any funds relating to the Bonded Projects without F&D's express and written approval;

b.   preventing C&H Paving from entering into any subcontracts with regard to the Bonded Projects without F&D's express and written approval;

c.      preventing any further property transfer(s) that could affect F&D's rights under the GIA, March 2022 Agreement, or otherwise, without prior Court approval;

d.      requiring the General Indemnitors to render to F&D a full and complete accounting of all assets owned by them or in which they, jointly or severally, have any interest;

e.      requiring the General Indemnitors to allow F&D full and complete access to all financial books, records, and accounts maintained by or for them;

f.      requiring the General Indemnitors to provide an accounting of all property, equipment, and materials owned by one or more of the General Indemnitors that has been transferred to any other person or entity;

g.      attaching or freezing the General Indemnitors' assets to the extent required to protect F&D in keeping with its rights under the GIA and March 2022 Agreement;

h.      permanently enjoining and restraining the General Indemnitors from selling, transferring, disposing of, or liening any assets or property, and further enjoining and restraining the General Indemnitors from allowing any assets or property to be liened, unless and until F&D shall

be otherwise protected from loss(es) incurred or that could occur going forward;

i. granting a lien upon all assets and property, including realty, personalty and mixed property, in which the General Indemnitors have any interest. F&D further requests that such lien(s) shall secure F&D against any loss it has sustained or may sustain or incur by virtue of its having executed the Bonds;

j. requiring the General Indemnitors, jointly and severally, to pay all F&D's fees, costs, and expenses that F&D has incurred and may incur as a result of issuing bonds on behalf of C&H; and

k. granting such further relief as this Court deems just and proper.

## COUNT IX
### (Exoneration Against C&H Paving)

104.   F&D realleges and incorporates paragraphs 1-2, 11, 17, 18, 21, 40, and 43 above, as though fully set forth herein.

105.   At the request of C&H, F&D issued payment and performance bonds listing C&H as principal for projects identified in Exhibit "B" to this Complaint.

106.   F&D has already been called upon to pay the debts and/or perform the obligations of C&H Paving, and it is obligated to exonerate F&D for any such alleged liability or loss.

107.   C&H Paving has been unwilling to meet its obligations at issue.

108.   F&D's obligation(s) is/are fixed, and/or F&D is otherwise entitled to be exonerated.

109.   Unless the requested relief is immediately granted, F&D will not be adequately safeguarded.

110.   Further, if the requested relief is not granted, C&H Paving may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing F&D's access to these assets for discharging the obligations at issue. Such actions will irreparably harm F&D.

111.   F&D is without a plain, speedy, or adequate remedy at law, and will be irreparably and permanently injured if this Court does not grant the relief sought.

WHEREFORE, F&D requests that this Court enter an Order exonerating it and granting such further relief as the Court deems appropriate.

## COUNT X
### (Subrogation Against C&H Paving)

112.   F&D realleges and incorporates paragraphs 1-2, 11, 17, 18, 21, 40, and 43 above, as though fully set forth herein.

113.   C&H Paving failed to honor its contractual and other obligations that are at issue.

114.   As a result, F&D, as surety for C&H Paving, is being forced to discharge C&H Paving's obligations and is now and/or will be equitably subrogated to the rights of the entities and/or people that F&D paid or pays on behalf of C&H Paving.

115.   F&D's liability was and/or is merely technical, secondary, and vicarious to that of C&H Paving, who was actively and completely at fault for and obligated to pay the underlying liabilities referenced above.

116.   As a direct and proximate result of C&H Paving's failure and refusal to pay its debts and liabilities and otherwise honor its commitments to GDOT and C&H Paving's subcontractors and suppliers, F&D has suffered damages including, but not limited to principal damages F&D paid to resolve payment and performance bond claims (or potential exposure under those bonds), plus attorneys' and/or consulting fees, costs, and expenses in investigating and resolving claims and/or exposure relating to the Bonded Projects.  F&D is also threatened with additional damages going forward.

WHEREFORE, F&D demands judgment against C&H Paving for its damages, prejudgment interest, and such further relief as this Court deems just and proper under the circumstances.

## COUNT XI

### (Common Law Indemnity Against C&H Paving)

117.   F&D realleges and incorporates the allegations in paragraphs 1-2, 11, 17, 18, 21, 40, and 43 as if fully set forth herein.

118.   C&H Paving, as principal, was primarily liable to GDOT and to C&H Paving's subcontractors and suppliers who provided labor, services, and/or materials for the Bonded Projects.

119.   F&D's liability, if any, as surety occurs only after C&H Paving failed and/or refused to honor its commitments, and only to the extent covered by the bonds at issue.

120.   Any liability on the part of F&D is technical, secondary, and vicarious to that of C&H Paving, who was actively and completely at fault for and/or obligated for the monies for which F&D seeks to recover in this lawsuit.

121.   As a direct and proximate result of C&H Paving's failure and refusal to honor its commitments, F&D has suffered damages including, but not limited to principal damages in investigating and resolving claims and potential exposure relating to the Bonded Projects, plus related attorneys' and/or consulting fees, costs, and expenses.  F&D is exposed to additional potential damages going forward.

WHEREFORE, F&D demands judgment against C&H Paving for its damages, plus prejudgment interest and such other and further relief as this Court deems just and proper under the circumstances.

Submitted July 20, 2023.

Respectfully submitted,

*/s/ P. Keith Lichtman*
P. KEITH LICHTMAN
GA Bar No. 521321
klichtman@mills-legal.com
ZECHARIAH D. ANDERSON
GA Bar No. 893340
zanderson@mills-legal.com
MILLS LAW GROUP
1397 Carroll Drive NW, Suite 100
Atlanta, GA 30318
*Counsel for Fidelity & Deposit*
*Company of Maryland*

*/s/ John E. Price*
JOHN E. PRICE
GA Bar No. 142012
jprice@fulcherlaw.com
Fulcher Hagler LLP
One 10th Street
Suite 700
Augusta, GA 30901
*Counsel for Fidelity & Deposit*
*Company of Maryland*