# **EXHIBIT A**





# General Indemnity Agreement

**ZURICH**

THIS GENERAL INDEMNITY AGREEMENT ("Agreement"), dated this 30 day of July, 2015 by:

| |
|---|
| C&H Paving, Inc., 167 Knox Rivers Road Thomson, Georgia 30824 a Georgia Corporation. |
| Quality Asphalt, LLC., 918 Molly Pond Road Augusta, Georgia 30901, a Georgia LLC. |
| Benjamin Cranford, Inc., 167 Knox Rivers Road Thomson, Georgia 30824, a Georgia Corporation. |
| Benjamin C. Cranford, Jr., 1419 Tanyard Creek Drive Thomson, Georgia 30824 |
| Emmalee Cranford, 1419 Tanyard Creek Drive Thomson, Georgia 30824 |
| All new Indemnitors added to this Agreement by rider |

(each an "Indemnitor" and all of the above individually and collectively "Indemnitors") in favor of ZURICH AMERICAN INSURANCE COMPANY and its subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH INSURANCE GROUP LTD, their respective successors and assigns (individually and collectively "Surety") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured (herein "issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) in the name of or on behalf of any Indemnitor, any Related Entity, any other entity on request in accordance with this Agreement, or any combination thereof, whether issued prior to or after the execution of this Agreement, and all renewals, extensions, modifications and substitutions of bonds (collectively "Bonds" and each individually a "Bond"). This Agreement shall be liberally construed so as to fully protect, exonerate, indemnify and hold Surety harmless from all liability and Loss.

As an inducement to Surety to issue or refrain from cancelling Bonds, Indemnitors represent and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1. **PREMIUMS:** Indemnitors shall promptly pay all premiums and charges of Surety for Bonds, at the current rate charged by Surety, until Surety has been provided satisfactory evidence, in its sole discretion, that it has been fully released and/or discharged from liability under such Bonds.

2. **INDEMNITY:** Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability. The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed. Indemnitors shall promptly, upon demand, make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment. An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be *prima facie* evidence of the fact, amount and extent of the liability of Indemnitors for such Loss. Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds. If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations.

3. **SURETY'S RIGHT TO PERFORM, SETTLE AND/OR MODIFY:** Surety shall have the absolute and unconditional right and is authorized but not required to: (a) adjust, pay, perform, decline to perform, compromise, settle, deny, litigate or otherwise resolve any Claim and/or any claim, counterclaim, defense or setoff held by or made against any Indemnitor, Principal or other entity and/or to take any action to protect any rights of Surety or to preserve or protect Surety's interests, or to avoid or lessen any alleged liability (hereinafter "Settlement"); and (b) modify, consent to or decline to consent to modification of any Bond and/or Bonded Contract, and/or to take, consent to or decline to consent to any assignment (hereinafter "Modification"). Any Settlement and/or Modification by Surety shall be final, binding and conclusive upon Indemnitors. Indemnitors shall remain bound under this Agreement for all Loss even though any such Settlement or Modification by Surety does or might substantially increase the liability of Indemnitors.

4. **PLACE IN FUNDS:** Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to

Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

5. **PLEDGE AND ASSIGNMENT OF COLLATERAL**: Indemnitors pledge, assign, transfer and set over to Surety the Collateral, as collateral to secure the obligations in this Agreement, whether incurred before or after the execution of this Agreement, including a license to use the Collateral, without cost, to perform or discharge Surety's obligations under any Bond or Bonded Contract. This pledge and assignment becomes effective on the date of this Agreement, or the earliest date allowable by law.

6. **TRUST FUNDS**: All sums due, to become due, or received by any Indemnitor or Principal for or on account of any Bonded Contract are trust funds in which Surety has an interest as a beneficiary of the trust whether in the possession of such Indemnitor or Principal or another. Such trust funds shall be held in trust for the benefit and payment of all obligations or Loss for which Surety may be liable under any Bond. Surety has the right, but not the obligation, to require that trust funds be placed in a dedicated trust fund account. This Agreement and declaration constitute notice of such trust.

7. **UNIFORM COMMERCIAL CODE**: This Agreement constitutes a security agreement to Surety in accordance with the Uniform Commercial Code or similar statute in any jurisdiction. Surety may file a photocopy or other reproduction of this Agreement as a financing statement or otherwise take any action or file any statement or documents to perfect the rights and interests granted in the Collateral or trust funds at any time.

8. **TAKEOVER**: If an Event of Default occurs, Surety shall have the right, in its sole discretion, and is authorized to take possession of any part or all of the work, materials and equipment under any Bonded Contract and any other materials or equipment which Surety deems necessary or proper to perform such Bonded Contract, and to perform or arrange for the performance of such Bonded Contract.

9. **ADVANCES AND FINANCING**: Surety is authorized to guarantee loans, to advance or lend money to any entity which Surety may see fit for the purpose of facilitating performance of obligations under any Bond or Bonded Contract. Indemnitors shall indemnify Surety for all such loans or advances and all Loss incurred by Surety relating to such loans and advances. Any failure to use the loans or advances, in whole or in part, for performance of obligations under such Bonds or Bonded Contracts shall not be a defense to Indemnitors' duty to indemnify Surety for such loans or advances. Surety has no obligation to provide financing or other support to any Principal or Indemnitor.

10. **BONDS FOR OTHER ENTITIES**: Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any Related Entity. "Related Entity" means: (a) any present or future, directly or indirectly owned subsidiary or affiliate of any Indemnitor; (b) any legal entity in which any Indemnitor has or acquires an ownership interest; and (c) any joint ventures, consortiums, teaming arrangements or any other business collaboration or economic enterprise ("Joint Venture") in which any Indemnitor is or was a member at the time the Bond was issued. Indemnitors' obligations under this Agreement shall also apply to any Bond Surety issues for or on behalf of any entity other than a Related Entity, on the written request of any Indemnitor.

11. **FINANCIAL STATEMENTS, BOOKS AND RECORDS**: Indemnitors shall promptly provide Surety with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety. Indemnitors authorize any entity in which funds of any Indemnitor may be deposited to furnish to Surety a statement of the amount of such deposits as of the date requested. Indemnitors authorize any and all lenders, obligees, subcontractors, suppliers, accountants, other insurers, and other persons or entities to furnish to Surety any information requested by Surety, including but not limited to the performance of obligations under any Bond or Bonded Contract and payments related to any such Bond or Bonded Contract.

12. **ISSUANCE OF BONDS**: Surety does not guarantee the issuance or compliance of any Bond or any obligee's acceptance of any Bond issued. Surety has an absolute right to decline to issue or continue or renew any Bond and to cancel any Bond. If Surety issues a bid or proposal Bond or a written commitment to issue any Bond (each a "Bond Commitment"), Surety has an absolute right to decline to issue any Bond that may be required in connection with any award made under the proposal for which the Bond Commitment was given.

13. **WAIVER OF NOTICE**: Indemnitors waive notice of the issuance or cancellation of any Bond, any Settlement or Modification, and any act, fact or information concerning or affecting the rights and liabilities of Surety or the rights or liabilities of Indemnitors under the Bonds or this Agreement, notwithstanding any notice of any kind to which Principal and/or Indemnitors might otherwise have been or be entitled, and notwithstanding any defenses they might have been or be entitled to assert.

14. **OTHER SURETIES AS BENEFICIARIES:** If Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and/or reinsuring sureties, including the right to bring an action for enforcement of this Agreement. Surety may furnish copies of any and all underwriting and Claim documentation to reinsurers and co-sureties, including statements, agreements, financial statements, and any information which Surety now has or may obtain in the future concerning (a) Principals and/or Indemnitors, (b) Related Entities of Principals and/or Indemnitors, and (c) other entities for which any Bond is requested pursuant to paragraph 10.

15. **SURETY'S ADDITIONAL RIGHTS:** This Agreement is in addition to and not in lieu of all other agreements of indemnity and any and all rights, powers, and remedies that Surety may have or acquire against Indemnitors or any other person or entity, whether by agreement, law or otherwise. Indemnitors acknowledge and agree that other indemnity, collateral, property and/or security may be required by Surety with respect to Bonds issued under this Agreement. Indemnitors shall remain bound under the terms of this Agreement even though Surety may from time to time (before or after the date of this Agreement): (a) accept, modify or release other agreements of indemnity with respect to any Bond; (b) accept, modify the indemnity of, or release any Indemnitor or any other person or entity; or (c) accept, release or subordinate any rights to collateral, real property, personal property or security. Indemnitors' obligations to Surety shall not be waived or reduced by any claim, setoff, defense, or other right or cause of action which Indemnitors and/or Surety may hold against any person or entity or which may be asserted by any Principal, Indemnitor or any other person or entity arising from or related to any Bonded Contract, any Bond, this Agreement, other agreements, by law or otherwise. Surety is subrogated to all rights, Claims, funds and receivables related to any Bonded Contract. Surety has the right to offset Loss on any Bonded Contract against proceeds, funds, real property or personal property under any other Bonded Contract or otherwise available to Surety under this Agreement. Surety's forbearance or failure to act to enforce any right shall not waive or diminish any of its rights, which rights may be enforced at any time in Surety's sole discretion.

16. **SURETY'S RIGHT TO SPECIFIC PERFORMANCE:** Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

17. **POWER OF ATTORNEY:** Indemnitors irrevocably nominate, constitute, appoint and designate Surety, and any persons designated by Surety, as their attorney-in-fact, with the right, but not the obligation, to exercise all of the rights of Indemnitors pledged, assigned, transferred and set over to Surety in this Agreement, including, in the name of Indemnitors to make, execute, and deliver any and all assignments or documents deemed necessary and proper by Surety in order to exercise its rights, powers and remedies under this Agreement. Indemnitors ratify and confirm all acts taken by Surety and its designees as such attorney-in-fact and agree to protect and hold harmless Surety and its designees for all such acts.

18. **JOINT AND SEVERAL LIABILITY:** Indemnitors are jointly and severally liable to Surety under this Agreement. Surety may enforce this Agreement against any Indemnitor without joining any other Indemnitor, person or entity.

19. **CONTRIBUTION:** Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other and/or any Principal until all obligations to Surety under this Agreement, at law or in equity, have been satisfied in full.

20. **NOTICE TO SURETY:** Indemnitors shall notify Surety as soon as any Indemnitor becomes aware of the happening of any Event of Default. This notice, and any other notice to Surety, shall be addressed as follows: **Zurich Surety, Red Brook Corporate Center, 600 Red Brook Blvd., 4th Floor, Owings Mills, Maryland 21117, Attention: Vice President, Contract Surety.**

21. **LAWSUITS AND JURISDICTION:** Separate lawsuits may be brought under this Agreement as causes of action accrue, and the bringing of any lawsuit or the recovery of any judgment on any cause of action shall not prejudice or bar the bringing of other lawsuits, on the same or other causes of action, whether arising before or after any other lawsuit or cause of action. In any legal proceeding brought by or against Surety that in any way relates to this Agreement, each Indemnitor irrevocably and unconditionally submits to the jurisdiction, at Surety's sole option, of the Federal, state and local courts in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed, or (c) any action may be brought against Surety. Indemnitors submit to the jurisdiction of such courts and waive and agree not to assert that they are not subject to the jurisdiction of any such court or that the jurisdiction and/or venue is in an inconvenient forum or otherwise improper.

22. **GOVERNING LAW FOR BONDED CONTRACTS OUTSIDE THE UNITED STATES:** Indemnitors agree that as to any legal action or proceeding related to any Bond issued in connection with any Bonded Contract to be performed outside the United States and its territories, this Agreement shall be governed by and interpreted under the laws of the State of New York, without regard to principles of conflicts of laws.

23. **EXECUTION AND CHANGES:** This Agreement may be executed in counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Indemnitor when that Indemnitor executes this Agreement, regardless of whether any other party has executed the Agreement or fails to execute this Agreement. This Agreement shall only be changed or modified in writing.

24. **SEVERABILITY:** If any provision of this Agreement is found to be void or unenforceable as to an Indemnitor, the remainder of this Agreement shall nevertheless remain enforceable as to that Indemnitor; and the entire Agreement shall remain enforceable as to all other Indemnitors.

25. **TERMINATION:** Indemnitors' obligations and Surety's rights and remedies under this Agreement are continuing. Indemnitors acknowledge that their obligations under this Agreement remain for Bonds executed for entities that may be sold, dissolved, or otherwise disposed of in the future. This Agreement remains in effect until terminated and released by Surety. Any Indemnitor may terminate their participation in this Agreement with respect to future Bonds by sending written notice of termination to Surety at the address in Paragraph 20. Such termination shall be effective twenty (20) days from Surety's receipt of the notice ("Effective Date") and shall be effective only as to the Indemnitor providing such written notice. The notice of termination shall not terminate, modify, bar or discharge such notifying Indemnitor's obligations to Surety under this Agreement for: (a) Bonds issued prior to the Effective Date; (b) Bonds issued after the Effective Date where such Bonds are issued with respect to a Bond Commitment issued prior to the Effective Date; and (c) any Collateral or interest provided under this Agreement. The execution of any subsequent agreements of indemnity in favor of Surety by any Indemnitor shall not be construed as a novation, and this Agreement may only be terminated as provided herein.

26. **JURY WAIVER:** Indemnitors hereby knowingly and voluntarily waive and covenant that they will not assert any right to trial by jury in respect to any legal proceeding arising out of this Agreement.

27. **REPRESENTATIONS AND WARRANTIES:** Indemnitors each represent and warrant the following: (a) Each Indemnitor has a substantial, material, and/or beneficial interest in one or more Indemnitors or Principals obtaining Bonds or in Surety refraining from canceling any such Bond; (b) Each Indemnitor has the full power and authority to execute and deliver this Agreement and to perform all obligations in this Agreement; (c) All information provided to Surety by each Indemnitor prior to and after the execution of this Agreement is true, accurate and complete as of the time provided; and (d) Each right, power and remedy given to Surety, under any provision of this Agreement or otherwise, forms a material part of Surety's consideration for Bonds.

28. **WAIVER OF EXEMPTIONS:** Indemnitors waive all rights to claim any of their property, including their respective homesteads, as exempt from any levy, execution, sale or other legal process by Surety, unless such waiver is prohibited by law.

29. Intentionally Omitted.

30. **DEFINITIONS:**

**Bonded Contract** means any contract or other obligation referred to in any Bond or secured by any Bond.

**Change in Control** means any Principal or Indemnitor, without Surety's prior written consent: (a) assigning or selling any Bonded Contract; (b) undergoing a change in the beneficial ownership, directly or indirectly, of thirty percent (30%) or more of its voting stock (measured by voting power rather than number of shares) in one or more transactions, or any change in stock that results in a change of majority ownership; or (c) ceasing or threatening to cease to carry on business, or having any resolution passed or order made for its winding-up, liquidation or dissolution.

**Claim** or **Claims** means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond, any Bonded Contract, or this Agreement.

**Collateral** means all right, title and interest of one or more Indemnitor in the following, wherever located, and whenever acquired or arising: (a) all Bonded Contracts; (b) all goods (including equipment, machinery, tools and materials), general intangibles, and inventory, to the extent not subject to a prior perfected security interest; (c) all subcontracts and purchase

orders arising under any Bonded Contract, and all surety bonds supporting such subcontracts and purchase orders; (d) all sums which are or may become payable in connection with any Bonded Contract and all other contracts in which any Indemnitor has an interest; (e) all intellectual property (including proprietary software) necessary or required to perform any Bonded Contract; (f) any facilities or plants necessary or required to perform any Bonded Contract; and (g) any real or personal property, the improvement of which is secured by any Bond.

**Event of Default** means any one or more of the following: (a) failure to timely perform or comply with any Bonded Contract or failure to timely pay invoices, bills or other indebtedness or to discharge liabilities under any Bonded Contract or Bond; (b) Breach of any Bond or declaration of default under any Bonded Contract (whether admitted or contested); (c) Surety setting any reserve against Loss or incurring Loss; (d) breach of or failure to timely comply with this Agreement; (e) any Principal or Indemnitor becoming the subject of any bankruptcy, insolvency, receivership, creditor assignment or trusteeship (whether voluntary or involuntary and whether insolvent or not); (f) any proceeding which deprives or impairs any Principal, Indemnitor and/or Surety of the use of any Collateral; (g) any individual Indemnitor becoming legally incompetent, imprisoned, convicted of a felony, or disappearing and being unable to be located; (h) a Change in Control; (i) any default, however described, which occurs under any document relating to the financial indebtedness of any Principal or Indemnitor, or any event as a result of which that financial indebtedness is or becomes capable of being rendered prematurely due and payable; or (j) any representation by any Principal or Indemnitor to Surety which was materially false or misleading when made.

**Good Faith** means, with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Principal and Indemnitors.

**Loss** means all premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consultant fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post-judgment interest shall accrue from the date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law.

**Principal** means any person or entity whose obligation is guaranteed by a Bond.

**SIGNATURE PAGE(S) TO FOLLOW**

**(The remainder of this page is intentionally left blank)**

## SIGNATURE INSTRUCTIONS

***All signatures should be notarized and dated.***
1. Corporation: an officer on the operational side (i.e. President, CEO, COO) and an officer on the finance side (i.e. Secretary, CFO, Treasurer) should sign;
2. Limited Liability Corporation (LLC): (a) if manager-managed, and if only one manager, the manager should sign; if more than one manager, two managers should sign (b) if member-managed, two members should sign unless there is only one member, then the one member should sign, or (c) if the LLC has appointed officers to manage the LLC, an officer on the operational side and an officer on the finance side should sign.
3. Limited Partnership (LP): (a) if only one general partner, the general partner should sign; (b) if more than one general partner, two general partners should sign.
4. Limited Liability Partnership (LLP): at least two partners should sign.
5. Trust: All of the Trustee(s) should sign.

By signing below, each of the undersigned affirms to Surety that the undersigned is a duly authorized officer, manager, trustee, official or member of the entity for which the undersigned executes the foregoing Agreement. In such capacity the undersigned is familiar with all of the documents which establish the rights and which govern the affairs, power and authority of such entity including, to the extent applicable, the (1) certificate or articles of incorporation, (2) bylaws, (3) resolutions, (4) partnership, operating or limited liability agreements or (5) trust agreements of such entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the undersigned affirms that such entity has the power and authority to enter into such Agreement and that the undersigned is duly authorized to execute this Agreement on behalf of the entity and to bind the entity to its terms.

**INDEMNITOR:**
C&H Paving, Inc.
167 Knox Rivers Road
Thomson, Georiga 30824

*(SEAL, IF A CORPORATION)*

LAST 4 DIGITS OF TIN: ____

*Signer #1*

By: _[signature]_
Print Name_Benjamin C. Cranford, Jr._
As **President** of **C&H Paving, Inc.**

Date: 8/5, 20 15

---

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: Georgia    COUNTY OF: McDuffie

The following instrument was acknowledged before me this 5 day of August, 20 15 by:
[name of signatory] Benjamin C. Cranford, Jr. as [title of signatory] President
of [name of entity] C & H Paving, Inc., ("Entity"), on behalf of the Entity. He/She is personally known to me or has produced [form of identification] personally known as identification.
My commission expires:

_[signature]_    1-10-2019
Notary Public Signature    20 19
Printed Name Judy A. Booth

*[Notary Seal: Judy A. Booth, Notary Public, McDuffie County, GA, Comm. Exp. 1-10-2019]*

*Signer #2*

By: ___Gloria Mitchell___    Date: __8/5__, 20__15__
Print Name_Gloria Mitchell_____
As **Secretary** of **C&H Paving, Inc.**

| NOTARIAL ACKNOWLEDGEMENT |
| --- |
| STATE OF: __Georgia__    COUNTY OF: __McDuffie__ |
| The following instrument was acknowledged before me this __5__ day of __August__, 20__15__ by: [name of signatory] __Gloria Mitchell__ as [title of signatory] __Secretary__ of [name of entity] __C&H Paving Inc__, ("Entity"), on behalf of the Entity. He/She is personally known to me or has produced [form of identification] __personally known__ as identification. |
| My commission expires: 1-10-20__17__ |
| ___Judy A Booth___ |
| Notary Public Signature |
| Printed Name __Judy A. Booth__ |

*(Seal: JUDY A. BOOTH, NOTARY PUBLIC, McDUFFIE COUNTY, GA., Comm. Exp. 1-10-17)*

**(The remainder of this page is intentionally left blank)**

**INDEMNITOR:**
Quality Asphalt, LLC.
918 Molly Pond Road
Augusta, Georgia 30901

*(SEAL, IF A CORPORATION)*

LAST 4 DIGITS OF TIN: ▓▓▓▓

*Signer #1*

By: _____
Print Name_Benjamin C. Cranford, Jr. on behalf of C&H Paving_
As Managing Member of **Quality Asphalt, LLC.**

Date: __8/5__, 20_15_

---

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: __Georgia__     COUNTY OF: __McDuffie__

The following instrument was acknowledged before me this _5_ day of _August_, 20_15_ by:
[name of signatory] _Benjamin C. Cranford, Jr._ as [title of signatory] _Managing Member_
of [name of entity] _Quality Asphalt, LLC._, ("Entity"), on behalf of the Entity. He/She is personally known to me or has produced [form of identification] _personally known_ as identification.

My commission expires:

_Judy A. Booth_
Notary Public Signature       20_17_   1-10
Printed Name _Judy A. Booth_

*(Notary Seal: JUDY A. BOOTH, NOTARY PUBLIC, McDUFFIE COUNTY, GA, Comm. Exp. 1-10-17)*

(The remainder of this page is intentionally left blank)

**INDEMNITOR:**
Benjamin Cranford, Inc.
167 Knox Rivers Road
Thomson, Georgia 30824

*(SEAL, IF A CORPORATION)*

LAST 4 DIGITS OF TIN: ____

*Signer #1*

By: _____[signature]_____
Print Name __Benjamin C. Cranford, Jr.__
As **President** of **Benjamin Cranford, Inc.**

Date: __8/5__, 20__15__

---

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: __Georgia__   COUNTY OF: __McDuffie__

The following instrument was acknowledged before me this __5__ day of __August__, 20 __15__ by:
[name of signatory] __Benjamin C. Cranford, Jr.__, as [title of signatory] __President__
of [name of entity] __Benjamin Cranford, Inc.__, ("Entity"), on behalf of the Entity. He/She is personally known to me or has produced [form of identification] __Personally Known__ as identification.

My commission expires: __1-10-20 17__

_____[signature]_____
Notary Public Signature
Printed Name __Judy A. Booth__

*[Notary Seal: Judy Booth, Notary Public, McDuffie County, GA, Comm. Exp. 1-10-17]*

---

*Signer #2*

By: _____[signature]_____
Print Name __Emmalee Cranford__
As **Treasurer** of **Benajmin Cranford, Inc.**

Date: __8/5__, 20__15__

---

**NOTARIAL ACKNOWLEDGEMENT**

STATE OF: __Georgia__   COUNTY OF: __McDuffie__

The following instrument was acknowledged before me this __5__ day of __August__, 20 __15__ by:
[name of signatory] __Benjamin Cranford, Inc.__ as [title of signatory] __Treasurer__
of [name of entity] __Emmalee Cranford__, ("Entity"), on behalf of the Entity. He/She is personally known to me or has produced [form of identification] __Personally Known__ as identification.

My commission expires: __1-10-20 17__

_____[signature]_____
Notary Public Signature
Printed Name __Judy A. Booth__

*[Notary Seal: Judy Booth, Notary Public, McDuffie County, GA, Comm. Exp. 1-10-17]*

(The remainder of this page is intentionally left blank)

**SIGNATURE INSTRUCTIONS**   Each Indemnitor should sign and date their signature and provide all of the required information.

Each signature should be witnessed and notarized.

I/we have read this General Indemnity Agreement carefully. There are no separate agreements or understandings, either written or oral, that in any way lessen or change my/our obligations as set forth in this Agreement. In testimony hereof I/we have signed this Agreement on the day and year written below.

---

**WITNESS:**

Witness Signature: _Gloria M Mitchell_
Print Name: Gloria M Mitchell
Date: 8/5, 2015

**INDEMNITOR**
Benjamin C. Cranford, Jr.
1419 Tanyard Creek Drive
Thomson, Georiga 30824

Indemnitor Signature: _(signed)_
Date: 8/5, 2015

Last four digits of Indemnitor's Social Security Number: [REDACTED]

**NOTARIAL ACKNOWLEDGEMENT**
STATE OF: Georgia    COUNTY OF: McDuffie

The following instrument was acknowledged before me this 5 day of August, 2015 by:
[name of signatory] Benjamin C. Cranford, Jr. He/She is personally known to me or has produced [form of identification] personally known as identification.

My commission expires: 1-10-2017

Notary Public Signature: _Judy A Booth_
Printed Name: Judy A. Booth

*(Notary Seal: JUDY A. BOOTH, NOTARY PUBLIC, McDUFFIE CO., GA, Comm. Exp. 1-10-17)*

---

**WITNESS:**

Witness Signature: _Gloria M Mitchell_
Print Name: Gloria M Mitchell
Date: 8/5, 2015

**INDEMNITOR**
Emmalee Cranford
1419 Tanyard Creek Drive
Thomson, Georiga 30824

Indemnitor Signature: _Emmalee Cranford_
Date: 8/5, 2015

Last four digits of Indemnitor's Social Security Number: [REDACTED]

**NOTARIAL ACKNOWLEDGEMENT**
STATE OF: Georgia    COUNTY OF: McDuffie

The following instrument was acknowledged before me this 5 day of August, 2015 by:
[name of signatory] Emmalee Cranford. He/She is personally known to me or has produced [form of identification] personally known as identification.

My commission expires: 1-10-2017

Notary Public Signature: _Judy A Booth_
Printed Name: Judy A. Booth

*(Notary Seal: JUDY A. BOOTH, NOTARY PUBLIC, McDUFFIE CO., GA, Comm. Exp. 1-10-17)*

*(The remainder of this page intentionally left blank)*